UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARCUS ANTHONY DELGADO, )
)   Case No. 2:19-cv-00395-BJR
       *Plaintiff*, )
)
)   ORDER GRANTING DEFENDANT'S
    v. )   MOTION FOR SUMMARY JUDGMENT
)
)
HONEYWELL INTERNATIONAL, INC., )
d.b.a. HONEYWELL AEROSPACE, a )
Delaware corporation, )
)
       *Defendant*. )
_____ )

## I.    INTRODUCTION

Plaintiff Marcus Delgado, an African-American male, began his employment with Defendant Honeywell International, Inc. ("Honeywell") in 2001 and remained with the company until his resignation in 2019. Delgado brings this action against his former employer alleging: (1) racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. and the Washington Law Against Discrimination ("WLAD"), RCW 49.60.180. *et seq*.; (2) interference with his rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2615(a)(1); and (3) negligent infliction of emotional distress under Washington law. *See* Compl., Dkt. No. 1. Currently before the Court is Honeywell's Motion for Summary Judgment. *See* Def.'s Mot. Summ. J.; Pl.'s Resp., Dkt. Nos. 27, 34. Having reviewed the motion, opposition thereto, the relevant legal authority, and the record of the case, the Court will grant the motion. The Court's reasoning follows.

## II.   BACKGROUND

### A.   Delgado's Employment at Honeywell

Delgado was hired by Honeywell in May 2001. Delgado Dep. 20:15-17, Dkt. No. 34-2. After a series of promotions from November 2005 to December 2007, he transitioned from his original role in product development and quality assurance to one in the Program Planning and Control Department ("PP&C"). *Id.* at 20:21-21:19. In May 2011, he became a Senior PP&C Analyst at Honeywell's facility in Redmond, Washington. *Id.* Delgado remained in this role until his resignation on April 4, 2019. *Id.*

During the time period relevant to this action, Delgado's primary duty was to track, analyze, and report on the costs associated with Honeywell's aerospace development programs. Def.'s Mot. Summ. J. at 4. Delgado was directly supervised by Honeywell's PP&C manager. Robin Parker served in this role from 2014 until her promotion to Sr. PP&C manager in February 2017. Parker Decl. ¶ 3. On March 27, 2017, Minerva Davis replaced Parker as PP&C manager and, therefore, became Delgado's direct supervisor. Davis Decl. ¶ 4. Prior to her promotion, Davis was Delgado's peer from 2007 through 2017, working as a Sr. PP&C Analyst in the same department. *Id.* at 3. Delgado claims that from the moment Davis became his supervisor, he was subject to "a pattern of racial discrimination", including unfair ridicule and alienation from his team at Davis' direction. Delgado Dep. 97-98.

### B.   2017 Mid-Year Performance Review & Performance Improvement Plan

On July 28, 2017, Delgado received an unsatisfactory mid-year performance evaluation, including a 6-block rating[1] indicating his performance fell below Honeywell's standards. *See*

---

[1] According to Honeywell's performance scale, a 6-block rating indicates that Delgado's expected behaviors fell below Honeywell's expectations, while his performance and "targets for most goals with respect to quality and quantity" were at Honeywell standards. *See* Delgado 2017 Mid-Year Review.

Delgado 2017 Mid-Year Review, Dkt. No. 30-1. The 2017 mid-year evaluation listed Delgado's performance unsatisfactory in, among other areas, "providing key deliverables to his team" and more specifically, in "providing timely actuals [and] reviewing [Program Performance Reports] . . . with his program team with understandable variance explanations." *Id.* at 2. Delgado was also found to submit travel requests that "far exceed those [*sic*] of his peers, who also support [their] clients] virtually." *Id.*

Delgado was also placed on a 60-day Performance Improvement Plan ("PIP"). Among other things, the PIP required Delgado to: (1) "present the completed PPRs to the program team on a monthly basis"; (2) "be at [his] desk working by the agreed upon core hours"; (3) "complete[] the necessary training to be at the Bronze for schedule and Silver for cost"; and (4) receive "written pre-approval from [his] Program Manager authorizing travel against [a] particular program." *See* Delgado PIP at 3-5, Dkt. No. 30-2. The PIP further made clear that Delgado's failure to meet the expectations set forth in the PIP by September 29, 2017 would "result in further discipline up to and including the termination of [his] employment." *Id.* at 5.

### C. Delgado's Internal Complaint Against Davis

On August 2, 2017, less than a week after receiving notice of his negative evaluation and PIP placement, Delgado filed an internal complaint with Honeywell's Human Resources Department against Davis for racial discrimination. Business Conduct Incident Report at 1, Dkt. No. 32-1; Delgado Dep. 110:11-113:10. Delgado complained that Davis denied him opportunities that were granted to other employees, such as the ability to travel for work, receive training, and work from home. *Id.* at 4-5. He also alleged Davis had discriminated against him by giving him a negative performance review and refusing to conduct it in person. *Id.*

Honeywell conducted a formal internal investigation and determined there was no evidence

to support Delgado's concerns. *Id.* at 9. Specifically, Honeywell could not identify any discriminatory treatment by Davis; nor could it identify any signs he was treated less favorably than his colleagues. *Id.* On October 3, 2017, Honeywell's Senior HR Managers Joe Cawood and Heather Bore met with Delgado to share the conclusions of the investigation. Delgado Dep. 124:1-13.

### D. Delgado's Medical Leave & Voluntary Resignation

Around late September of 2017, Delgado first applied for short-term disability benefits and medical leave through Cigna, Honeywell's third-party benefits administrator. *Id.* at 148:4-19. Both of Delgado's requests were approved; his initial FMLA leave of absence was effective October 4 through October 31, 2017. *See* Cigna's Notice of Delgado's Medical Leave at 2, Dkt. No. 32-2. Delgado cites "the stresses with work" and the "hostile environment" as reasons for requesting these benefits. Delgado Dep. 142:12-13. Delgado's last day of work at Honeywell was October 3, 2017. *Id.* at 135:16-136:1; 141:11-18. Unknown to Honeywell at the time, Delgado suffered a cardiac arrest while playing in a basketball tournament on October 7, 2017. *Id.* at 150:19-23, 152:12-14; Davis Decl. ¶ 22. Delgado cites Honeywell's "hostile and discriminatory work environment" as the cause. Pl.'s Resp. at 4.

Due to his ongoing health conditions, Delgado requested several extensions of his leave of absence; all of which were approved. Delgado Dep. 156:9-25-157:12. He first received twelve weeks of FMLA leave from October 4, 2017 through December 25, 2017. *See* Cigna's April 4, 2019 Letter to Delgado at 2, Dkt. No. 32-4. After Delgado exhausted his initial twelve weeks of FMLA leave, he received an additional fifteen months of leave from Honeywell. *Id.; see also* Delgado Dep. 156:16-24. Delgado received a total of 18 months of medical leave. *Id.*

Honeywell's Medical Leave of Absence Policy states that the company will maintain an

employee's active job status for 18 months or a reasonable time thereafter. Bore Decl. ¶ 9. As his leave of absence approached 18 months, Cigna informed Delgado of Honeywell's policy and his options in a letter dated April 4, 2019; specifically, Delgado was given two weeks to contact Honeywell regarding his return to work. *Id.* Instead, Delgado notified Honeywell of his immediate resignation on April 14, 2019. Delgado Dep. 184:6-15; Bore Decl. ¶ 10.

### E.   Procedural History

On or about November 16, 2017, Delgado filed a charge of discrimination based on race and retaliation with EEOC, Compl. ¶ 3.9; the EEOC then issued him a right to sue letter, *id.* ¶ 2.4.

He filed the instant lawsuit on March 18, 2019; he brings six claims against Honeywell. *Id.* ¶¶ 3.9-4.17. Delgado brings federal and state law claims for racial discrimination and retaliation alleging Honeywell: (1) intentionally discriminated against him based on his race by giving him a negative performance evaluation and consequently placing him on a PIP as well as treating him differently than his colleagues by denying his requests for travel, training, and telework; and (2) retaliated against him for filing an internal complaint by preventing him from interviewing for an open position within the company and constructively discharging him. *Id.* ¶¶ 4.1-4.4; 4.10-4.11. Delgado also filed a claim under 29 U.S.C. §2615(a)(1), alleging Honeywell interfered with his rights under the FMLA by negligently terminating his position after an extended leave of absence based on misinformation from Cigna. *Id.* ¶¶ 4.6-4.9. Lastly, Delgado brings a state law claim for negligent infliction of emotional distress under Washington law. *Id.* ¶¶ 4.16-4.17.

Honeywell moves for summary judgment on each of Delgado's claims. *See* Def.'s Mot. Summ. J. With respect to Delgado's discrimination and retaliation claims, Honeywell argues the undisputed material facts establish that Delgado's managers had several legitimate, nondiscriminatory reasons for giving him a negative performance evaluation and consequently

placing him on a PIP. *Id.* at 4. Honeywell also argues the undisputed material facts establish that Delgado received a negative performance review before he filed an internal complaint for discrimination; and was not treated differently than his colleagues. *Id.* at 1-2. Honeywell contends it did not interfere with or deny his rights under the FMLA because his requests for continuous leave were approved. *Id.* at 15-16. Honeywell also moves for summary judgment on Delgado's state claim for negligent infliction of emotional distress arguing the claim is not factually or legally supported. *Id.* at 16-17.

### III.   LEGAL STANDARD

#### A.  Summary Judgment

Rule 56 provides that a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Fed. Home Loan Mortg. Corp. v. SFR Investments Pool 1, LLC*, 893 F.3d 1136, 1144 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1618 (2019). Disputes over facts become "material" only where they "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, "materiality is based on the substantive law at issue." *Id.* A "genuine dispute of material fact," occurs where the "evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* The moving party bears the "initial responsibility of informing the district court of the basis for its motion," including "identifying those portions of the pleadings . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). In meeting this burden, the nonmoving party must go beyond the pleadings and show "by [his] own affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Hopkins v.*

*Andaya*, 958 F.2d 881, 885 (9th Cir. 1992) (citing *Celotex Corp.*, 477 U.S. at 324). Further, "[w]here the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where the moving party has met its initial burden, the nonmovant must respond by showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. "If the nonmoving party fails to establish the existence of a genuine issue of material fact, 'the moving party is entitled to judgment as a matter of law.'" *Perfect Co. v. Adaptics Ltd.*, 374 F. Supp. 3d 1039, 1041 (W.D. Wash. 2019) (quoting *Celotex Corp.*, 477 U.S. at 323–24). In conducting its evaluation of the merits of a motion for summary judgment, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, the Court must "view 'the evidence in the light most favorable to the nonmoving party.'" *Universal Cable Prods., LLC v. Atl. Specialty Ins. Co.*, 929 F.3d 1143 (9th Cir. 2019) (quoting *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002)).

## IV.   DISCUSSION

### A.  Racial Discrimination Claims

The Court first addresses Delgado's claims for racial discrimination under Title VII and the WLAD. Compl. ¶¶ 4.1–4.5. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Similarly, the WLAD is "patterned after Title VII, so 'decisions interpreting the federal act are persuasive authority' for its construction." *Tymony v. Harper*, No. C13-1085, 2014 WL 3689766, at *2 fn. 4 (W.D. Wash. July 24, 2014) (quoting *Xieng v. Peoples Nat'l Bank of*

*Washington*, 844 P.2d 389, 392 (Wash. 1993) (en banc)); *see also Oliver v. Pacific Northwest Bell Tel. Co.*, 724 P.2d 1003, 1005 (Wash. 1986) (en banc)) (noting that because the WLAD "lacks specific criteria for proving a discrimination claim," courts look to cases interpreting equivalent federal laws). Delgado must provide evidence that "'give[s] rise to an inference of unlawful discrimination.'" *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). When no direct evidence of discrimination exists, Delgado may prove his case through circumstantial evidence, following the three-step burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1105–06 (9th Cir. 2008) (Title VII); *Hines v. Todd Pac. Shipyards*, 127 Wash. App. 356, 371 (2005) (WLAD). To establish a prima facie case of racial discrimination under this framework, Delgado must first demonstrate that (1) he is a member of a protected class; (2) he performed his job satisfactorily; (3) he experienced an adverse employment action; (3) he was qualified for his job; and (4) he was treated less favorably than similarly situated employees outside his protected class. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006); *Burdine*, 450 U.S. at 254. Under the *McDonnell* framework, establishing a prima facie case creates a rebuttable presumption that the employer discriminated against the employee in an unlawful manner. *Id.* Therefore, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.; see also Warren v. City of Carlsbad*, 58 F.3d 439, 442 (9th Cir. 1995). If the employer offers a legitimate explanation for its decision, the burden shifts back to the plaintiff to show that the employer's explanation is pretext for the discriminatory or retaliatory behavior. *Id.*

Delgado contends that Davis engaged in a pattern of racial discrimination towards him by giving him a negative performance evaluation and consequently placing him on a PIP. Compl. ¶¶

4.1-4.4; 4.10-4.11. He also alleges Davis treated him differently than his colleagues by denying his requests for travel, training, and telework. *Id.* Honeywell moves for summary judgment on these claims contending that the undisputed material facts establish that Delgado did not suffer an adverse employment action within the meaning of Title VII and the WLAD; and that he fails to provide any record evidence to demonstrate that Honeywell's proffered reasons for its actions were mere pretext for racial discrimination. Def.'s Mot. Summ. J. at 10-13.

Delgado has advanced a prima facie case of these four elements. He is African American; he was promoted at least three times since beginning his career at Honeywell and received a "top performer" award; his negative performance review and PIP placement as well as his denied requests for travel and internal training are adverse employment actions; and he alleges his colleagues' requests were approved. This prima facie case is sufficient to shift the burden of production to Honeywell to articulate a legitimate, nondiscriminatory reason for its adverse actions.

### i. *2017 Mid-Year Evaluation and PIP*

Delgado first alleges Davis engaged in pattern of racial discrimination toward him by giving him an unwarranted low performance rating, using his poor performance review as a pretext to place him on a PIP, and marring his "record of exemplary performance" by portraying him in a negative light to block his promotional potential within the company. Pl.'s Resp. at 2-3.

The Court finds that Honeywell has satisfied its burden with respect to this claim by documenting Delgado's performance issues in previous evaluations and informal reviews. Honeywell offers the following non-discriminatory reasons for giving Delgado a negative performance review. First, Honeywell argues that Delgado's performance consistently fell below Honeywell's standards. His performance deficiencies – failing to consistently provide key

deliverables, timely cost reports, and thorough explanations of cost variables on the PPRs – are almost identical to those for which Delgado was previously coached. While Parker and Stefanie Ivie acknowledged that Delgado's performance was generally satisfactory prior to 2017, they noticed "inconsistencies . . . with respect to his completion of key deliverables, such as internal reporting requirements and month end processing duties." Parker Decl. ¶ 6; Ivie Decl. ¶ 7. For example, between 2014 and 2017, both declared that Delgado performed his duties well when he was "closely monitored and coached on his performance"; however, when he was not, his performance declined and became inconsistent. *Id.* Honeywell produces Delgado's 2015 and 2016 performance assessments attesting to these deficiencies. *See* 2015 Performance Assessment (noting that Delgado "needs to improve on . . . expense reporting, time reporting", "reviewing reports prior to submitting them to internal or external customers" and citing "customer dissatisfaction" regarding report "submitted with errors"; and attendance and availability issues); *see also* 2016 Performance Assessment (citing issues with Delgado's "attendance and compliance to core working hours [and] requesting time off"; and adherence to "chain of command").[2] While Delgado received a 2-block rating in 2016, the company's internal investigation revealed that this score was given in error; Parker explained that Delgado should have received a 5-block rating, but the mistake was never rectified or communicated to him.[3] *See* Business Conduct Incident Report at 7, 27. Next, Honeywell demonstrates that these very same issues continued throughout the first

---

[2] Delgado also alleges he was faced with "unfair ridicule and was the butt of ongoing racially motivated jokes by [] Davis." Pl.'s Resp. at 3. However, he concedes that "Where's Marcus?" is the only example of these alleged jokes. His supervisors declare that they were often concerned with Delgado's attendance and continued absences from the office; Honeywell's investigation and his performance reviews confirm as much. As such, the Court finds that Delgado fails to provide any evidence to support his allegation with respect to this claim.

[3] According to Honeywell's performance scale, a 2-block rating indicates that Delgado exceeded Honeywell's standards for meeting "his targets for most goals with respect to quality and quantity and delivered these results on or ahead of schedule" and met Honeywell's standards for "demonstrate[ing] expected behaviors overall."; while a 5-block rating indicates that Delgado performed "at Honeywell standards" with respect to these targets and behaviors. *See* 2016 Performance Assessment at 3, Dkt. No. 29-2.

half of 2017. Parker, Ivie, and Davis all testify that Delgado consistently failed to provide timely cost reports and thorough explanations of cost variances for the PPRs during that time. Honeywell demonstrates that, based on these concerns, he was given an overall rating of a 6-block indicating that his performance fell below Honeywell's standards. This decision was not Davis' alone. Honeywell presents testimony that both Parker and Ivie worked closely with Davis to determine his performance rating; both remained involved in supervising him even after Davis became his manager.

Another example Delgado proffers as evidence of Davis' racial discrimination is her refusal to meet with him face-to-face to deliver his 2017 mid-year review, unlike her in-person meetings with his colleagues. Pl.'s Resp. at 3 (citing Delgado Dep. 81-83). Delgado explains that his original performance review was rescheduled by management to July 28, 2017; on the rescheduled date, he was out of the office on sick leave and requested that his evaluation be postponed so that "the review could be conducted in person as was done for other team members." *Id.* Instead, "Davis refused this request and insisted [he] attend [the] virtual meeting despite his illness." *Id.* Davis and her supervisor Parker telephonically delivered his evaluation, despite his request to postpone the meeting. *Id.;* Davis Decl. ¶ 10; Parker Decl. ¶ 10.

Honeywell establishes a legitimate, non-discriminatory reason for Davis' refusal to reschedule Delgado's mid-year review while he was out on sick leave; and her decision to conduct it by phone instead. Honeywell cites as evidence the findings of its internal investigation, which indicates that July 28, 2017 – the day of Delgado's scheduled review – was the internal deadline for PP&C management to finish delivering its mid-year reviews. *See* Business Conduct Incident Report at 9. The investigation also revealed that PP&C management "made the call to have him call in because he called in for other meetings earlier that day." *Id.* at 27. Honeywell acknowledges

1   Delgado's review should have been "delivered face to face" and later coached Davis, Parker, and

2   Ivie on this issue. *Id.* at 9. Based on this evidence, the Court finds that Honeywell has articulated

3   legitimate, nondiscriminatory reasons for giving Delgado a negative mid-year evaluation and PIP.

4         Because Honeywell has met its burden of production to establish a legitimate basis for the

5   adverse employment actions, the burden shifts back to Delgado to offer evidence that Honeywell's

6   explanation is pretextual. *Id.* Delgado can demonstrate pretext "either directly by persuading the

7   court that a discriminatory reason more likely motivated the employer or indirectly by showing

8   that the employer's proffered explanation is unworthy of credence." *Chuang v. University of*

9   *California Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Burdine*, 450 U.S.

10  at 256).

11        Delgado does neither. In an attempt to establish pretext, he testifies that his "unsatisfactory

12  review came as a complete shock" noting he "could not find any explanation for this substandard

13  and inconsistent review other than discrimination." Pl.'s Resp. at 2. He points to the "satisfactory

14  ratings on his previous performance review" and Davis' failure to address his performance issues

15  at any of their previous one-on-one meetings as evidence to rebut Honeywell's explanation. *Id.* As

16  stated above, Honeywell submitted to the Court Delgado's 2015 and 2016 evaluations, which

17  reference many of same performance issues Delgado claims Davis "waited to spring . . . on . . .

18  him as a pretext to place him" on a PIP. *Id.* at 3. There is no doubt that Delgado was aware of these

19  issues, many of which he had been coached on since 2014. Delgado also offers his own testimony

20  to refute the deficiencies raised in his mid-year review claiming it "contained a number of

21  subjective measurements and errors in calculating subjective standards."; he offers this as evidence

22  of Davis' discriminatory intent. *Id.* at 3. Delgado's subjective beliefs are contradicted by the

23

testimony of all three of his managers, each of whom attested that Delgado's performance was inconsistent and that he struggled to timely submit his assigned deliverables.

### ii. *Business Travel & Trainings*

Delgado also proffers as an example of Davis' discriminatory intent is that she denied him opportunities that were granted to other employees, such as his ability to "travel for work—impacting his ability to receive training, attend meetings, and properly service customers." Pl.'s Resp. at 4 (citing Delgado Dep. 128-130).

Honeywell provides several legitimate, nondiscriminatory reasons for denying Delgado's requests for travel and associated trainings. First, Honeywell argues that a typical PP&C analyst, like Delgado, is only required to travel one to two times per year; the role can otherwise be performed remotely. *See* Business Conduct Incident Report at 8; Davis Decl. ¶ 14. Honeywell contends Delgado traveled significantly more than his peers establishing that he traveled at least eight times in 2016. *See* Business Conduct Incident Report at 10; Davis Decl. ¶ 15. Delgado concedes as much and acknowledges he timed his business trips to Phoenix, Arizona with family visits. *Id.*; Delgado Dep. 79:16-19; 81:3-5. Honeywell also submits evidence that Delgado's latest travel request violated company policy because he attempted to charge his travel to a different program than the one that he requested. *See* Business Conduct Incident Report at 10. Lastly, Honeywell substantiates Delgado filed excessive travel requests – a statement memorialized in both his 2017 mid-year review and the interviews conducted during the investigation into his complaints. *Id.; see also* Delgado 2017 Mid-Year Review at 2 (stating "Marcus' team requests for him to travel to their location in order to work with him; these requests far exceed that of his peers, who also support virtually."). The internal investigation also confirmed the frequency of Delgado's travel requests noting that "[i]n the past, [he] typically travels to [Phoenix] 8 times per year for

work [and] during these work visits [he] also spends time with his family in [Phoenix]".  *See* Business Conduct Incident Report at 4. It also confirmed that Delgado applied for travel more frequently than necessary for a typical PP&C analyst with the company; traveled more frequently than his colleagues in the same role in the years prior; incorrectly charged his most recent travel request to a different program than the one he requested; and unnecessarily requested travel to client sites. *Id.* at 10.

Delgado fails to offer specific and substantial evidence that Honeywell's explanations are pretextual. *Id.* First, he contends Honeywell's explanations – that PP&C analysts need only travel to client sites twice per year and that this policy limited unnecessary travel – "were applied subjectively and inconsistently" and "not communicated" to him. Pl.'s Resp. at 4. Aside from his subjective brief, he provides no evidence to support his assertions. *See Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001) (holding that circumstantial evidence of pretext must be "specific and substantial" in order to survive summary judgment). While Delgado testifies that his colleagues were granted travel opportunities, he provides no substantiation for this testimony. Pl.'s Resp. at 11.

The Court therefore finds that Honeywell has catalogued a lengthy record of Delgado's professional deficiencies and unnecessary travel requests in recorded documents compiled over several years; and that Delgado has failed to produce contrary evidence to demonstrate that a reasonable jury could rationally find Honeywell's proffered explanation unworthy of credence. Thus, Honeywell is entitled to summary judgment on Delgado's discrimination claim.

**B. Retaliation**

The Court next turns to Delgado's retaliation claims under Title VII and the WLAD. Compl. ¶¶ 4.1–4.5. Honeywell moves for summary judgment contending that the undisputed

material facts show he did not suffer an adverse employment action; and no reasonable jury could find that Honeywell's proffered reasons for its actions were based on retaliation. *Id*. The *McDonnell* burden shifting analysis applies to Delgado's retaliation claims. Therefore, Delgado must first establish a prima facie case of retaliation by showing (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two." *Surrell*, 518 F.3d at 1108 (citing *Bergene*, 272 F.3d at 1140–41) (Title VII); *Francom v. Costco Wholesale Corp.*, 991 P.2d 1182, 1191 (2000) (WLAD).

The parties do not dispute that Delgado engaged in a protected activity by filing an internal complaint of discrimination on August 2, 2017. However, Honeywell disputes that Delgado establishes that he suffered an adverse employment action after filing this grievance. Def.'s Mot. Summ. J. at 13-15. An adverse employment action is one that a reasonable employee would find materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). "At the summary judgment stage, the Court need only determine whether Plaintiff has presented substantial evidence for the jury to find that Defendant's action would have dissuaded a reasonable worker from making or supporting a charge of unlawful conduct by Defendant." *Edman v. Kindred Nursing Centers West, L.L.C.*, No. 14-CV-01280, 2016 WL 6836884, at *7 (W.D. Wash. Nov. 21, 2016) (citing *Burlington*, 548 U.S. at 57).

Delgado claims he was subject to the following adverse actions by Davis after filing a complaint against her: 1) she denied his requests for travel and telework; 2) she failed to register him for the requisite training course to complete his PIP; and 3) she blocked his ability to be considered for a promotional opportunity in September 2017. Pl.'s Resp. 11-13. This Court has already determined, *supra*, that Delgado fails to offer evidence that Honeywell's explanation for

his denied travel requests was pretextual. Specific to his retaliation claim, Delgado also fails to demonstrate that any of his travel requests were denied after August 2, 2017, the date of his protected activity. To the contrary, Delgado he testifies that his requests were denied between April and July of 2017—in other words, *before* he filed the internal complaint. Thus, these denials could not have been done in retaliation for his protected activity. Delgado Dep. 77:14-24.

Another instance that Delgado submits as an example of Davis' retaliatory behavior towards him is that she hindered his ability "to complete the steps in his PIP [by] refus[ing] to allow him to register [for the necessary training] despite other team members [allegedly] being registered without making any requests what-so-ever." Pl.'s Resp. at 4 (citing Delgado Dep. 128-130); *see also* Delgado PIP at 4 (listing requirement to "complete[] the necessary training to be at the Bronze for schedule and Silver for cost" by September 28, 2017). He testifies that Davis and Parker did not automatically enroll him in the August session "to make sure that [he] completed" his PIP; when he eventually took the initiative to request that he be registered for the September session, he claims "it was [] difficult for [him] to get in at that point." Delgado Dep. 126:10-127:25. He concludes "from the discrimination aspect, there were other employees on [his] team who were registered for courses because it's a management only directive", *id.* at 127:7-12; and alleges they "did not take the same approach for" him, *id.* at 128:9-10.

With respect to this claim, Honeywell proffers evidence that Delgado did not ask Davis or Parker to register him for the August session. *Id.* at 126:12-129:14. Instead, Honeywell argues, it had to remind Delgado through email correspondence to follow up on the required, incomplete courses he needed to fulfill for his PIP. *Id.* at 128:11-134:18. Delgado acknowledges receiving this correspondence and he does not dispute that he never asked his supervisors to register him for the August training, *id.* at 131:21-132-2. Despite this evidence, Delgado still maintains that he

expected management to automatically enroll him in the training courses. Aside from his testimony that Davis and Parker "enrolled everyone else . . . on the team [without them] having to ask", Delgado fails to proffer anything more than his speculative belief to substantiate his claim; he could not point to any conversations where this was communicated to him nor could he establish that any of his colleagues were on a PIP and similarly working to fulfill these courses as a requirement. *Id.* at 128:5-10; 130:15-131:8. As such, the Court finds no evidence to substantiate his claim.

Lastly, as an example of Davis' retaliatory behavior, Delgado points to an incident from September 2017 where she "blocked and prevented" him from interviewing for a PMOS Portfolio Manager position, which was "one level up" from the Sr. PP&C Analyst role; he claims the position was reopened so he could apply. *Id.* at 136:2-137:9; 140:19-24. He testifies that an internal manager "highly recommended" him for this role "based on [his] credentials and . . . qualifications." *Id.* at 117:8-12. A month after submitting his grievance, Delgado followed up with the internal manager and he claims that he then learned he was "blocked from interviewing" for the position by Davis. *Id.* at 117:18-19. The parties disagree as to the characterization of the incident; Honeywell contends it was not an existing position while Delgado classifies it as a promotional opportunity. Assuming Honeywell refused to consider Delgado for a promotion a month after he filed his internal complaint against Davis, he establishes a prima facie showing of retaliation. *See Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (listing "a refusal to consider for promotion" as an "employment decision[] that can constitute an adverse employment action"); *see also Ruggles v. California Polytechnic State Univ.*, 797 F.2d 782, 786 (9th Cir. 1986) (same).

In response, Honeywell produces the following evidence of a legitimate basis for its decision. First, the Portfolio Manager position for which Delgado applied was cancelled and never filled. Bore Decl. ¶ 12; Delgado Dep. 137:4-12. Next, Davis informed the hiring manager that Delgado was not eligible to interview for the position because of her good faith belief that he was not eligible for an internal transfer pending completion of his PIP. Davis Decl. ¶¶ 19-20. Delgado is unable to offer evidence that these articulated reasons are pretextual and therefore cannot meet his respective burden within the retaliation framework to preclude summary judgment. The Court therefore finds it appropriate to grant Honeywell's motion for summary judgment on Delgado's retaliation claim.[4]

## C. FMLA Claim

The FMLA allows covered employees "up to twelve weeks of leave each year for their own serious illnesses or to care for family members, and guarantees them reinstatement after exercising their leave rights." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1119 (9th Cir. 2001) (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)(1)). To successfully claim a case of interference under the FMLA, Delgado must demonstrate that Honeywell interfered with, restrained, or denied his exercise of FMLA rights; and that he was prejudiced by the violation. 29 U.S.C. § 2615(b)(2). *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *see also McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300, 1316 (W.D. Wash. 2014) ("[F]or an employee to obtain relief under the FMLA, the asserted violation must result in prejudice to the employee.").

---

[4] Delgado also alleges constructive discharge based on the same evidence cited in support of his claims for discrimination and retaliation. *See* Pl.'s Resp. at 12-13. The Court finds that Delgado fails to substantiate a showing or to create a triable issue of fact that his working conditions were so "intolerable and discriminatory" that a reasonable person in his position would have felt that he had no choice but to resign. *See Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004). Although his work environment may have been stressful for him, the evidence does not meet the standard under federal and state law that the conditions were so "extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his [] employer." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007).

Delgado cannot survive summary judgment on this claim because all his requests for continuous medical leave were approved. He applied for and was granted a leave of absence, beginning on October 4, 2017 and lasting through December 25, 2017. *See* Cigna's Notice of Delgado's Medical Leave at 2. After Delgado exhausted his initial twelve weeks of FMLA leave, Delgado Dep. 156:16-24, he received an additional fifteen months of leave per Honeywell's policy, Cigna's April 4, 2019 Letter to Delgado at 2. He was not denied any benefits to which he was entitled, receiving a total of over eighteen months of leave. Delgado concedes as much. Delgado Dep. 156:16-24; 181:6-10.

Delgado attempts to support his claim of interference citing that Honeywell wrongfully terminated his position after "negligently rel[ying] upon [Cigna] to manage its FMLA claims . . . despite [its] knowledge that this . . . company was known to make errors", Pl.'s Resp. at 14. Due to his ongoing health conditions, Delgado applied to extend his leave of absence prior to December 25, 2017, the day his FMLA leave was set to expire. *See* Cigna's April 4, 2019 Letter to Delgado at 2. Despite following Honeywell's procedures for requesting an extension of his leave, Honeywell terminated his employment with the company, for job abandonment, effective January 11, 2018.

Honeywell denies interfering with Delgado's FMLA rights noting that his later-rescinded termination was "based on an honest mistake" and its delayed receipt of his notice of intent to extend his leave of absence. It proffers evidence to establish that it "did not receive timely notification from Cigna that [Delgado] had applied to extend his leave beyond December 25, 2017"; and it did not hear back from Delgado in response to its inquiries into his expected return date. *See* Def.'s Mot. Summ. J. at 7 (citing Bore Decl. ¶ 7; Davis Decl. ¶ 24; Delgado Dep. 157:19-159:21). It also submits communications dated January 5, 2018, in which Cigna notifies

Honeywell that Delgado had not contacted the company regarding his intent to extend his leave beyond December 25, 2017. *See* Cigna's Email Chain to Honeywell HR at 2-4, Dkt. No. 32-3).

The Court finds that Delgado provides no factual evidence—whatsoever—to support his claim that Honeywell prevented him from "exercising his right to return to work . . . despite his continued compliance with company policy for extended medical leave." Pl.'s Resp. at 14. First, Delgado's claim fails as a matter of law because Honeywell terminated Delgado's employment for job abandonment, effective January 11, 2018, "*after* completion of his FMLA leave." *Id.* Next, Honeywell acknowledges it terminated his position "based on an honest mistake" after receiving incorrect information from Cigna that Delgado had not applied to extend his medical leave beyond December 25, 2017. Def.'s Mot. Summ. J. at 16. Delgado's failure to respond to Honeywell's inquiries regarding his scheduled return date, January 2, 2018, also suggested he had no interest in resuming his employment with the company.[5]

Lastly, Delgado suffered no harm from his brief termination. *See Ragsdale*, 535 U.S. at 89 (holding the FMLA "provides no relief unless the employee has been prejudiced by the violation."). Once Honeywell received the correct information that Delgado had applied to extend his leave of absence, the company immediately retracted its termination decision on January 30, 2018 and fully reinstated his employment back to the date he was terminated. Bore Decl. ¶ 8; Delgado Dep. 160:1-23. Delgado's benefits were also reinstated retroactively. *Id.; see Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1271 (W.D. Wash. 2013) (citing *Washburn v. Gymboree Retail Stores, Inc.*, 2012 WL 5360978, at *7 (W.D. Wash. Oct. 30, 2012)) ("[E]ven if

---

[5] Honeywell attempted to contact Delgado through text messages and voicemail – via Davis and its Human Resources Department – on December 22, 2017 and on January 2, 3, and 4, 2018. Davis Decl. ¶ 23; Delgado Dep. 154:19-155:24. Although Honeywell attempted contact him regarding his expected return date, January 2, 2018, Delgado does not recall receiving those communications or having any contact with Honeywell between October 4, 2017 and December 25, 2017, when he was on FMLA leave, or anytime thereafter. Delgado Dep. 154:19-155:24.

there is a technical violation under FMLA, an employee who does not suffer any harm and receives all leave requested is not entitled to relief under the FMLA."). The Court therefore finds that Delgado cannot make a claim of FMLA interference because he was not denied any leave; and was not prejudiced from his brief and later-rescinded termination. Accordingly, Honeywell's Motion for Summary Judgment as to Delgado's claim of FMLA interference is granted.

### D.  Negligent Infliction of Emotional Distress

Washington courts have long recognized that common law tort claims, such as negligent infliction of emotional distress ("NIED"), must be dismissed as duplicative when they are based on the same underlying facts as a discrimination claim. *See Wahlman v. DataSphere Techs., Inc.*, 2014 WL 794269, at \*13 (W.D. Wash. Feb. 27, 2014) (citing *Francom,* 991 P.2d at 1192–93) ("an employee may recover damages for emotional distress in an employment context but only if the factual basis for the claim is distinct from the factual basis for the discrimination claim"); *see also Ellorin v. Applied Finishing, Inc.*, 996 F. Supp. 2d 1070, 1093–94 (W.D. Wash. 2014) (dismissing state law claim for negligent infliction of emotional distress as duplicative of discrimination claim under WLAD). However, when a plaintiff alleges the "non-discriminatory conduct caused separate emotional injuries, he or she may maintain a separate claim for negligent infliction of emotional distress." *Francom*, 991 P.2d at 1192.

The Court finds Delgado's NIED claim is based on the same factual allegations underlying his WLAD claims for discrimination and retaliation. Delgado concedes as much. Delgado Dep. 15:15-21 ("Davis' [sic] behavior is alleged to have been racially motivated, but many of the facts and alleged claims do not relate exclusively to her discriminatory actions—they additionally rest in Honeywell's [sic] inappropriate, hostile, and retaliatory actions taken against [] Delgado for his

complaints and use of FMLA benefits.").[6] Therefore, Delgado's NIED claim and his WLAD

claims are barred as duplicative because they are based on the same, overlapping factual

allegations. As such, Honeywell's motion for summary judgment on Delgado's state law claim for

negligent infliction of emotional distress is GRANTED.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS Honeywell's Motion for Summary

Judgment as to:

(1) Plaintiff's claims for discrimination and retaliation pursuant to the Title VII;

(2) Plaintiff's claims for discrimination and retaliation pursuant to the Washington Law

Against Discrimination;

(3) Plaintiff's claims for interference with his rights pursuant to the Family Medical Leave

Act; and

(4) Plaintiff's state law claims for negligent infliction of emotional distress.

**IT IS SO ORDERED.**

DATED this 25th day of November, 2020.

_Barbara J Rothstein_

_____

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

---

[6] Delgado's reliance on *Wahlman* is also misplaced. *See Wahlman*, 2014 WL 794269, at *13 (finding plaintiff presented sufficient evidence to establish "there were some e-mails that, if not sexist in nature, were disturbing and supported their emotional distress claims."). Here, Delgado provides no distinct, non-discriminatory evidence – whatsoever – to support his position.